IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANA MARIA M.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO. 21-1305 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 9. The Commissioner opposed. Docket No. 15. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 10. After careful review of the administrative record and the parties' briefs, the Commissioner's decision is **AFFIRMED**.

**I.   Procedural Background**

Plaintiff worked as a cashier at a supermarket in 2009 and 2010. Tr. 50.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of February 1, 2014, the following conditions limited her ability to work: severe ongoing bilateral L5 radiculopathies, severe bilateral carpal tunnel syndrome, and fibromyalgia. Tr. 112. The application was denied initially and upon reconsideration. Tr. 169-178. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on September 19, 2019, a hearing was held before ALJ Yeline Quiñones-Regalado. Tr. 39-53. Plaintiff testified and was represented by counsel. Id. Vocational Expert Danila Luyanda also testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of February 1, 2014, through

---

[1]   Plaintiff's last name is omitted for privacy reasons.
[2]   "Tr." refers to the transcript of the record of proceedings.

1

March 31, 2018, the last date insured. Tr. 33. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ but the request was denied on April 27, 2021 (Tr. 1-3), rendering the Commissioner's decision the final decision for review by this Court. On June 26, 2021, Plaintiff filed the Complaint, which the Commissioner answered on December 8, 2021, and both parties filed supporting memoranda. Docket Nos. 1, 4, 9, and 15.

## II.    Legal Framework

### A.  Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See Id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. §423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-142. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986).

If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed

impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B. Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). In reviewing a decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F.3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769

(1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F.2d 1, 3 (1st Cir.1987). Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no rationally adequate evidence to justify the ALJ's conclusion. Manso–Pizarro, 76 F.3d at 16; Seavey, 276 F.3d at 9.

### III. Discussion

Plaintiff argues that the ALJ erred by making a mistake as to her age and by failing to find her disabled pursuant to the Medical Vocational Guidelines in effect during the relevant period. Plaintiff further argues that the ALJ failed to categorize her fibromyalgia as severe and did not account for her hand limitations in the RFC. She further sustains that the ALJ erred by concluding that Plaintiff could perform relevant work in the national economy. The Commissioner sustains that the ALJ's decision was based on substantial evidence in the record and correct legal standards. The Court agrees with the Commissioner.

**A. The ALJ Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged onset of disability. Tr. 24.

At step two, the ALJ determined that Plaintiff had severe impairments under 20 C.F.R. §404.1520(c): cervical and lumbar degenerative disc disease, Carpal Tunnel Syndrome, mild knee osteoarthritis, and obesity.[3] Tr. 24. The ALJ further found that Plaintiff had a series of impairments that were not severe because these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 25. The ALJ concluded that Plaintiff's fibromyalgia was non-severe because it imposed only minimal limitations on her ability to engage in basic work activities. Tr. 25; 367; 470. The non-severe impairments were evaluated in combination with Plaintiff's severe impairments in determining her RFC.

---

[3] Plaintiff mentions in passing that the ALJ erroneously discarded as non-severe her physical impairment of diabetes mellitus. Docket No. 9, at 3. This argument was not developed. Arguments not fully developed or made in passing are deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and proceeded to determine Plaintiff's RFC. Tr. 26.

After considering the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §404.1567(a), except that she:

> could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; but could never climb ladders, ropes, and scaffolds or crawl. She could frequently push and pull as much as she could lift and carry. The claimant could frequently reach in all directions and could frequently perform handling and fingering. She could not be exposed to unprotected heights, moving machinery, mechanical parts, or cutting instruments. The claimant could not operate foot controls. Tr. 27.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which these were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 27.

At step four, the ALJ noted that Plaintiff was unable to perform her past relevant work as a cashier. Tr. 32. Therefore, the ALJ proceeded to step five and concluded that Plaintiff was able to perform jobs that existed in significant numbers in the national economy including document preparer, lens inserter, or addresser. Tr. 33. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 33.

### B. Plaintiff's Challenges to the ALJ's Decision

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to categorize her fibromyalgia as severe, by not accounting for her Carpal Tunnel syndrome ("CTS") and by formulating an incomplete RFC. The Court disagrees.

### 1. Fibromyalgia

SSR 12-2P sets out the guidelines for the ALJ to evaluate symptoms and functional limitations associated with fibromyalgia. SSR 12-2P, 2012 WL 3104869 (S.S.A.). "The SSA acknowledges through SSR 12-2p that fibromyalgia may be a disabling condition, but there must be sufficient objective evidence to support a finding that a claimant's impairment(s) so limits her functional abilities that it precludes her from performing any substantial gainful activity." Medina-

5

Augusto v. Comm'r of Soc. Sec., 2016 WL 782013, at 7 (D.P.R.). The symptoms and signs of fibromyalgia are not *per se* disabling. Id. at 8 (quoting Barowsky v. Colvin, 2016 WL 634067 at *5).

The ALJ found that Plaintiff's fibromyalgia was non-severe because it imposed only minimal limitations on Plaintiff's ability to engage in basic work activities. Tr. 25. The ALJ noted that treatment records throughout the relevant period showed that Plaintiff had largely a normal physical condition and that her pain could be controlled with medication. Tr. 25-26; 425-27. The ALJ noted that Plaintiff sought emergency room treatment at Hospital San Carlos Borromeo on June 9, 2017, complaining of pain in her bones, knee, and neck. Tr. 29; 459. However, the clinical impressions from the hospital stated that Plaintiff's condition was "good" and that the patient reported feeling better. Plaintiff was prescribed medications to manage the pain and was discharged the same day. Tr. 461-462. Plaintiff went to the emergency room again in July 2017, complaining of back pain and numbness after a fall. Tr. 454-458; 465. However, the ALJ noted that while the radiological studies showed mild lumbar spine spondylosis, the Plaintiff was discharged on the same day because her condition had improved. Tr. 29; 454-458; 465.

In evaluating Plaintiff's functional limitations, the ALJ considered Plaintiff's pain symptoms associated with fibromyalgia in combination with her other musculoskeletal conditions, such as back pain associated with her spine. Tr. 25. The ALJ noted that there was no evidence of a spinal condition which would cause chronic non-radicular pain, weakness, or an inability to ambulate effectively. Tr. 26. For example, Dr. Olga V. Ríos-Robles reported on April 3, 2017, that Plaintiff had a normal gait. Tr. 418. In September 2017, the consulting neurologist Dr. Ortiz Cintrón reported that Plaintiff had limited range of motion of the spine, diminished strength in the left lower extremity and an antalgic gait. Tr. 473-476. The ALJ also considered the progress notes from the treating generalist, Dr. Noel Nieves-López, spanning from May 3 to July 20, 2017, which showed normal physical examinations. Tr. 29; 443-445; 447-448; 451-452. Plaintiff showed no apparent distress, walked with a normal gait and had overall normal examinations of her neck, back, spine, and upper and lower extremities. Id. The ALJ concluded that Plaintiff's fibromyalgia was non-severe pursuant to 20 CFR 404.1520(d) because it only caused mild limitations and did not prevent her from engaging in work activities as those described in her RFC. Tr. 26.

The ALJ also considered that Plaintiff's pain symptoms could be controlled with pain medication. The ALJ gave weight to consultant neurologist Dr. William Hernández Vera, who

prescribed Neurontin for Plaintiff's pain symptoms associated with fibromyalgia in June 2016. Tr. 25; 367. Plaintiff visited Dr. Hernández Vera on January 10, 2017 and February 22, 2017, and was prescribed medication for her back pain. Tr. 407; 409. The ALJ also considered the treatment notes of physical therapist Dr. José F. Miró-Santiago, in which he referred Plaintiff to a pain management clinic. Tr. 393. The ALJ noted that Plaintiff's treatment for her pain symptoms was sporadic. Tr. 27. The Plaintiff testified during the hearing that she suffered from back pain but that, due to her limited health insurance coverage, she had not received much treatment. Tr. 43. The ALJ noted that Plaintiff testified that she had been prescribed Neurontin 800 mg, Dologesic, and Relafen for pain relief. Tr. 28; 45. The ALJ concluded that Plaintiff's generalized pain was not as limiting as reported by Plaintiff because the pain could be controlled with medication. Tr. 25. See Meléndez Cruz v. Saul, 2020 WL 1951733 at 6 (D.P.R.) (not a totally disabling condition when plaintiff has infrequent treatments and only moderate symptoms).

      The ALJ noted that Plaintiff's fibromyalgia did not significantly limit her. Plaintiff testified during the hearing that she cleaned during the day, cooked, and did laundry with intervals of rest. She also drove short distances. Tr. 30; 45. Plaintiff also told consulting neurologist, Dr. Ríos Robles, in April 2017 that she performed minimal household chores, cleaned, and drove locally. Tr. 413. The ALJ evaluated Plaintiff's fibromyalgia pursuant to Section II. A of SSR 12-2P and concluded that Plaintiff suffered from non-severe fibromyalgia, because it was controlled with prescribed pain medications and was not significantly limiting. Tr. 24-25. See Rascoe v. Comm'r of Soc. Sec., 103 F. Supp. 3d 169, 182 (D. Mass. 2015) (quoting SSR 85-28, 1985 WL 56856, at 3 (S.S.A.) (an impairment at step two will be found non-severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work […]").

      The ALJ also considered Plaintiff's diagnostic tests during the relevant period, which showed that Plaintiff's condition was not significantly limiting and there was no indication that her condition had worsened. Tr. 28. For example, on March 31, 2015, radiological imaging of Plaintiff's cervical and lumbar spine showed no evidence of fractures or dislocations. Tr. 353-54. Furthermore, on January 11, 2016, imaging of Plaintiff's lumbar spine showed anatomic alignment, symmetric joints, and no fracture or suspicious lesion. Tr. 351. On June 9, 2017, images of Plaintiff's cervical spine showed normal prevertebral soft tissues, well-preserved disc spaces, and no evidence of fracture or subluxations. Tr. 423. On July 20, 2017, imaging of Plaintiff's

lumbar spine showed no evidence of fracture or dislocation, well preserved intervertebral spaces, and only mild lumbar spondylosis and mild tilting of the lumbar spine. Tr. 458. Also on July 20, 2017, imaging of Plaintiff's cervical spine showed no evidence of fracture or subluxation, normal prevertebral soft tissues, and well-preserved disc spaces. Tr. 465. An MRI of Plaintiff's thoracic spine showed no acute fracture or dislocation and well-preserved intervertebral spaces with only mild thoracic spondylosis. Tr. 466. On September 5, 2017, imaging of Plaintiff's cervical spine showed no acute fracture or dislocation and normal alignment. Tr. 471. The ALJ concluded that the record did not demonstrate a worsening of Plaintiff's medical conditions or a significant functional limitation due to fibromyalgia. Tr. 29.

Plaintiff argues that the ALJ's non-severity determination contradicts the medical record because two doctors classified her fibromyalgia as severe and her pain had gotten more frequent and severe. Docket No. 9 at 23-24. The ALJ gave weight to the consultative examining neurologist Dr. Winston R. Ortiz Cintrón, who diagnosed Plaintiff with fibromyalgia in September 2017 using the criteria set forth in SSR 12-2P. Tr. 29; 470. Dr. Ortiz Cintrón reported that Plaintiff's functional capacity was as follows: "cannot perform jobs requiring heavy lifting and carrying, walking long distances, standing and sitting for prolonged periods and bending frequently. Handling objects is mildly impaired. Hearing and speaking are not impaired." Tr. 470. The ALJ considered Plaintiff's functional limitations as described by Dr. Ortiz Cintrón and accounted for the Plaintiff's pain and fibromyalgia diagnosis in the RFC, limiting her to sedentary work. Tr. 31. The ALJ's conclusion is consistent with Dr. Ortiz Cintrón's assessment that Plaintiff could perform sedentary work. Plaintiff's argument that two doctors deemed that her fibromyalgia was severe is insufficient to discard the ALJ's conclusions. Indeed, Dr. Florentino Figueroa and Dr. Magda I. Rodríguez concluded that Plaintiff's fibromyalgia was severe. However, they both concluded that Plaintiff could perform work without significant restrictions. Tr. 118. 137; 158; 111-122; 125-143. The ALJ was more conservative than Dr. Figueroa and Dr. Rodríguez in limiting Plaintiff to sedentary work. Tr. 31. See Halla v. Colvin, 2016 WL 234802, at *7 (D. Mass.) (no basis to object to the RFC assessment when it is more conservative than recent RFC assessments of non-examining reviewing physicians on which the ALJ could rely).

**2. Carpal Tunnel Syndrome ("CTS")**

Plaintiff argues that the ALJ erred by not including more restrictive hand limitations in the RFC. Docket No. 9 at 18-19. The ALJ considered the objective medical evidence which showed

8

bilateral CTS. Tr. 25. The ALJ noted that physiatrist Dr. José F. Miró-Santiago, performed an electromyographic examination (EMG) and nerve conduction velocity study (NCVS) on November 28, 2016, which revealed bilateral CTS. Tr. 28; 378. But the ALJ noted that no treating physician reported any severe hands limitations. Tr. 26. The ALJ considered the findings of Dr. Ríos-Robles, who diagnosed Plaintiff with mild bilateral CTS in April 2017. Tr. 28; 415. Dr. Ríos-Robles noted that while Plaintiff had diminished strength in her hands, numbness in her palms, and difficulty reaching above her head, she had 4 out of 5 strength in her upper extremities. Furthermore, Dr. Ríos-Robles reported that Plaintiff was performing minimal household chores including cleaning and driving locally. Tr. 415. The ALJ further noted that Plaintiff testified that she could clean, cook and do laundry with intervals of rest. Tr. 30; 65. The ALJ also considered the progress notes by Dr. Nieves-López spanning from May 3, 2017 to July 20, 2017, which showed normal physical examinations. Dr. Nieves-López diagnosed Plaintiff with bilateral CTS. Tr. 29; 443-445; 447-48; 451-52.

The ALJ further considered the findings of Dr. Florentino Figueroa, who stated that Plaintiff had severe CTS but could perform frequent handling and fingering with both hands. Tr. 118; 120-121. The ALJ also considered the findings of Dr. Magda I. Rodríguez, who stated that Plaintiff had bilateral CTS but could perform frequent handling and fingering with both hands and had hand strength of 4 out of 5. Tr. 133; 139-41. The ALJ gave little weight to the opinions of Dr. Figueroa and Dr. Rodríguez because the radiological studies supported limiting the Plaintiff to sedentary work. But adopted the manipulative limitations as consistent with the treatment received by Plaintiff and her hand strength. Tr. 31.

The ALJ gave weight to consultant neurologist Dr. Winston Ortiz Cintrón, who reported on September 2017 that Plaintiff had bilateral CTS, and had diminished hand strength. Upon physical examination, Dr. Ortiz Cintrón reported that, although Plaintiff had difficulty performing tasks such as picking up a coin or buttoning her clothes, she only had mild weakness in grip strength, had normal reflexes and sensation, no muscle atrophy or loss of tone, trophic changes, swelling, deformities or contractures. Dr. Ortiz Cintrón also stated that Plaintiff's ability to handle objects was only mildly impaired. Tr. 26; 470; 474. The ALJ incorporated the limitations reported by Dr. Ortiz Cintrón and limited Plaintiff's RFC to sedentary. Tr. 31. This is supported by the evidence in the record.

### 3. Plaintiff could perform work in the national economy.

Plaintiff argues that both the RFC and the hypothetical presented to the vocational expert ("VE") were flawed because these did not account for additional hand limitations which impede her from performing jobs in the national economy. Docket No. 9 at 19-20. The ALJ took into account the medical evidence when she concluded in Plaintiff's RFC that Plaintiff was limited to sedentary work but could "'frequently perform handling and fingering." Tr. 27. The hypothetical presented to the VE was appropriate because it asked if Plaintiff could perform the jobs listed at the sedentary level, if Plaintiff could "frequently perform handling and fingering tasks", to which the VE answered yes. Tr. 51. The hypothetical presented to the VE included Plaintiff's age, education, vocational profile, and RFC. The hypothetical was appropriate. See Britt v. Saul, 860 F. App'x 256, 263 (4th Cir. 2021) ("the hypothetical question need not list each impairment; it need only give the claimant's age, education, experience, and residual functional capacity.").

### 4. Plaintiff's age and ability to communicate in English were considered by the ALJ.

Plaintiff argues that the ALJ erred at step 5 by classifying her as a younger individual in the age category of 18-44 instead of classifying her in the age category of 45-49. Plaintiff further argues that the ALJ erred in determining that Plaintiff could communicate in English. Plaintiff argues that, after considering these two factors, the ALJ should have determined that Plaintiff was disabled under Appendix 2 to Subpart P of Part 404 Medical Vocational Guidelines 201.00(h)(1) and Medical Vocational Guideline 201.17. Docket No. 9 at 17.

The ALJ considered Plaintiff a younger individual, born on September 12, 1971, who was 46 years old, on March 31, 2018, the last date insured. Tr. 32. But the ALJ incorrectly stated that Plaintiff was in the age category of younger individual (age 18-44) on the last date insured. Id. The ALJ correctly noted that Plaintiff subsequently changed age category to a younger individual (age 45-49). Id. During the bulk of the relevant period, which began on February 1, 2014, Plaintiff was between the ages of 42 and 44. Plaintiff did not attain age 46 until the very end of the relevant period. The ALJ properly classified Plaintiff as a younger individual because she was under the age of 50. See 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45."). See Bernier v. Astrue, 2011 WL 1832516, at 4 n.2 (D. Mass.) (defining a younger individual as someone age 18 through 49.)

The ALJ noted that Medical Vocational Grid Rule 201.18 applied to Plaintiff based on her unskilled past relevant work. Tr. 33. Plaintiff was 46 on the last date insured. Grid Rule 201.18 was properly applied because it applies to younger individuals ages 45 through 49, who can communicate in English. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 201.18. The ALJ noted that Plaintiff was unable to perform all the requirements of the grid's level of work and presented a hypothetical to the VE contemplating Plaintiff's age, education, work experience and RFC. Tr. 51. The VE testified that there were jobs in the national economy at the sedentary, unskilled level which Plaintiff could perform, including document preparer, lens inserter, and addresser. Tr. 33; 51. The ALJ could rely on the VE's testimony concluding that Plaintiff was not disabled because there were jobs she could perform in the national economy. Tr. 32-33. See Guzmán Pérez v. Comm'r of Soc. Sec., 2019 WL 5858159, at 5 (D.P.R.) (quoting Berríos-López v. Sec'y of Health and Human Servs., 951 F.2d 427, 429 (1st Cir. 1991) ("The ALJ was entitled to credit the vocational expert's testimony as long as there was substantial evidence in the record to support the description of claimant's impairments given in the ALJ's hypothetical to the vocational expert.")).

The Medical Vocational Guidelines in effect in 2018 did not require a finding of disabled. The Medical Vocational Guidelines in effect in 2018 warranted a finding of disabled for individuals ages 45 through 49, who were restricted to sedentary work, had no transferable skills or were unskilled, had no past relevant work or could no longer perform past relevant work, **and** could not communicate in English, or could speak and understand English, but were unable to read or write in English. See Medical Vocational Guidelines 201.00(h)(1) and 201.17, 20 C.F.R. § Pt. 404, Subpt. P, App. 2, §§ 201.00(h)(1); 201.17[4] (emphasis added). These guidelines do not apply to Plaintiff because she can communicate and read or write in English. Tr. 32-33; 51.

Plaintiff completed a Disability Report in February 2017 and stated that she could not speak and understand English. Tr. 32; 286. However, Plaintiff stated that she could read and understand English and could write more than her name in English. Tr. 286. In January 2017, Plaintiff completed a Work History Report in English. Tr. 275-283. Plaintiff also testified that she spoke English and could read and write in English. Tr. 51. Plaintiff was also able to answer questions in English. Tr. 50. Plaintiff did not have a translator at the hearing. Tr. 41-53. The ALJ thus correctly concluded that Plaintiff was able to communicate in English. Tr. 32. See Birgy v. Comm'r of Soc.

---

[4] Amended after the ALJ's decision to remove inability to communicate in English as an education category. See 85 FR 10586-01, 2020 WL 885690 (S.S.A.).

Sec., 2017 WL 4081528, at *5 (W.D. Mich.) (ALJ can rely on Plaintiff's testimony), Ramos v. Kijakazi, 2022 WL 993754 *5 (D.Mass.) (ALJ can rely on personal observations of the claimant's demeanor during the hearing). Plaintiff's reliance on the June 2017 Disability Report and a Disability Report Appeal from July 2018 to challenge the ALJ's conclusion is unavailing as these discuss the language abilities of a listed contact person, not those of Plaintiff. Tr. 307; 327.

## IV.    Conclusion

The ALJ properly evaluated the record as a whole and her decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 24th day of March 2023.

s/Giselle López Soler<br>
GISELLE LOPEZ SOLER<br>
United States Magistrate Judge